IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INNOVAPORT, LLC,

                     Plaintiff,                     OPINION AND ORDER

v.

                                                      22-cv-425-wmc

TARGET CORPORATION,

                     Defendant.

---

In this patent case, plaintiff Innovaport, LLC, asserts infringement claims against defendant Target Corporation based on six patents related to methods and systems for providing retail product information. The parties have filed cross motions for summary judgment. In its motion, Target argues that Innovaport's asserted claims are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and recite no inventive concept. For the reason explained below, the court agrees that claim 15 of the '260 patent is directed to abstract ideas of collecting, analyzing, retrieving and presenting information without reciting an inventive concept to make the claim patent eligible. Moreover, because all of the other patents in suit are directed to the same abstract idea, the court finds that claim 15 is representative of all of plaintiff's asserted claims of infringement as a matter of law. Accordingly, the court will grant defendant's motion for summary judgment and deny plaintiff's motion for partial summary judgment. Having been rendered moot by this ruling, the court will also deny defendant's motions for claims construction, to strike plaintiff's expert's declaration, and for a claims construction hearing.

BACKGROUND[1]

Plaintiff Innovaport is a Wisconsin limited liability corporation with its principal place of business in Mequon, Wisconsin. Defendant Target is a corporation with its principal place of business in Minneapolis, Minnesota. In this lawsuit, Innovaport asserts that Target infringed U.S. Patent Nos. 8,775,260 (the "'260 patent"); 8,787,933 (the "'933 patent"); 9,489,690 (the "'690 patent"); 9,990,670 (the "'670 patent"); 7,231,380 (the "'380 patent"); and 7,819,315 (the "'315 patent").

The asserted patents all claim priority to Provisional Application No. 60/158,444, which was filed on October 9, 1999, and have similar specifications. Referring to the '260 patent, the patents purport to "provid[e] product location information within a store." ('260 patent (dkt. #28-1) at 1:24-26.)

According to the '260 patent background, an increase in the number of different products sold in stores and the proliferation of "warehouse-type" stores made it difficult for customers to find the products they wanted. (*Id.* at 1:30-46.) Consequently, shoppers often had to ask a store employee to direct them to their desired products. (*Id.* at 1:58-60.) As noted in the background, however, there were disadvantages to this approach: store employees might be unable to provide clear instructions; and a "constant barrage" of product location questions could hamper employee productivity. (*Id.* at 1:62-2:10.) Further, the background noted that many stores already had a computerized inventory system that tracked key product information, like the quantity of available products and

---

[1] The following facts are material and undisputed for purposes of summary judgment.

product locations. (*Id.* 2:21-29.) Thus, utilizing the existing computerized inventory system to address customer-specific requests would afford various identified advantages, including: "systems [for providing product information that] were easily accessed by customers . . . in a rapid and convenient manner"; "employ[ing] a system with user interfaces that are conveniently accessible by customers from a number of locations within a given store"; making "use of modern electronic interface technologies"; and "interconnect[ing]" such a system "with existing . . . computerized or other information systems within stores." (*Id.* at 2:59-3:11.)

OPINION

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that the facts material to the motion are not in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party may not avoid summary judgment merely by showing that some facts are in dispute; rather, it must establish that there are factual issues that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Although the court must "take all facts and reasonable inferences in the light most favorable to" the non-moving party, *Helman v. Duhaime,* 742 F.3d 760, 761 (7th Cir. 2014), that party must still come forth with enough evidence to support a reasonable jury verdict in its favor. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1137 (7th Cir. 2009).

Here, among other things, defendant argues that it is entitled to summary judgment because the claims are unpatentable, abstract ideas -- retrieving and providing information -- and present no inventive concepts.[2]

**I.   Patent-Eligible Subject Matter**

Section 101 of the Patent Act defines patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  This section also contains "an important implicit exception: Laws of nature, natural phenomena, and *abstract ideas* are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (alteration adopted and emphasis added).

Setting up a two-stage framework, the Supreme Court has held that a claim falls outside § 101 where: (1) it is "directed to" a patent-ineligible concept, like an abstract idea; and (2) the particular elements of the claim, considered "both individually and 'as an ordered combination,'" do not add enough to "'transform the nature of the claim' into a patent-eligible application." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77-79 (2012)). Under this *Alice* framework, the first-stage inquiry looks to "the focus of the claims, their

---

[2] Alternatively, defendant argues that plaintiff's infringement theories are flawed in whole or in part because: (1) defendant's website and mobile application do not infringe when used remotely; (2) its website and mobile application do not have "user interfaces"; (3) it does not provide mobile devices; and (4) plaintiff has not shown "periodic" communication with any user interface. Defendant further argues that it could not have willfully infringed plaintiff's patents, and plaintiff's asserted claims are invalid for lack of a written description.  Because the court will grant summary judgment on § 101 grounds, it need not address these additional arguments.

character as a whole," while the second-stage inquiry looks "precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Because the exceptions to § 101 "'are the basic tools of scientific and technological work,' the Court has emphasized [its] concern that a patent claim which ties up a law of nature or an abstract idea 'might tend to impede innovation more than it would tend to promote it.'" *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 71); *see also Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175, 14 L. Ed. 367 (1853) ("A patent is not good for an effect, or the result of a certain process," for such patents "would prohibit all other persons from making the same thing by any means whatsoever."). The Federal Circuit has likewise stressed that "a claimed invention must embody a concrete solution to a problem having the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Interval Licensing*, 896 F.3d at 134. Nevertheless, courts must be careful using the invalidity tool because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217.

Before beginning the § 101 analysis, the court will briefly address plaintiff's two procedural arguments. First, plaintiff argues that this court held as a matter of law in *Innovaport LLC v. Lowe's Home Centers, LLC*, No. 21-CV-418-WMC, 2022 WL 1078548 (W.D. Wis. Apr. 11, 2022), that the claims in the patents in suit were non-abstract and

5

contained an inventive concept. While addressed at the motion to dismiss stage, this court did hold in *Innovaport* that the defendant "arguably overgeneralize[d]" plaintiff's claims by not addressing that the claims required presenting some "additional information," such that the patents were not solely directed at an abstract idea. *Id.* at 3 (quotation marks omitted). Accordingly, this court held the "additional information" requirement was "*at least facially* the very type of inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Id.* (emphasis added and quotation marks omitted).

However, this case is distinguishable from *Innovaport* because defendant has now moved for summary judgment and shown that the material facts to its motion are not in dispute. *See Celotex Corp.,* 477 U.S. at 323. Specifically, defendant has offered evidence and argument supporting its assertions that not only the general claims are abstract and non-inventive but the requirement of "additional information" is itself an abstract idea.

Second, plaintiff argues that its patents are presumptively valid, and it is entitled to summary judgment on § 101 patent eligibility because the U.S. Patent and Trademark Office ("Patent Office") concluded that the '690 and '670 patents were patent eligible under § 101. To begin, although during the prosecution of the '670 and '690 patents, the patent examiner initially rejected the claims under § 101, after plaintiff amended each patent to add, among other things, a limitation of providing "additional product-related information" in response to a product location inquiry, the examiner concluded that the claims satisfied § 101 and were patent eligible. (Amendment to '690 patent (dkt. #66-2) 2; Amendment to '670 patent (dkt. #66-5) 2.) Further, the court does presume that plaintiff's patents are valid, and defendant must prove invalidity by clear and convincing

6

evidence. *Ameritox, Ltd. v. Millennium Health, LLC*, 88 F. Supp. 3d 885, 902 (W.D. Wis. 2015). However, the court is not required to defer to the Patent Office's § 101 eligibility determinations and will not do so here. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023).

**II. Claim 15 of the '260 Patent**

The '260 patent describes an apparatus and method for providing product-location information to customers in a store. Specifically, claim 15 of the '260 patent provides as follows:

> 15. A method of providing product location information within a first store, the method comprising:
>   providing a hub that is at least indirectly in communication with each of a plurality of user interfaces, and that is capable of accessing at least one database, the at least one database including both product location information and additional product-related information,
>   wherein the additional product-related information includes: information concerning a quantity of a first product within the store; information concerning a price of the product; information concerning an availability or unavailability of the product within the store; and information linking the product with another product in a cross-referential manner;
>   periodically engaging in the communication with each of the user interfaces, wherein the engaging in the communication includes:
>   receiving inquiry signals from the user interfaces;
>   querying the database to obtain portions of the product location information in response to the inquiry signals; and
>   providing information signals in response to the inquiry signals for receipt by the user interfaces, wherein the information signals include portions of both the product location information and the additional product-related information, whereby the user

7

>interfaces are able to provide output signals based upon the information signals;
>wherein at least some of the communication is wireless communication.

### A. *Alice* Step One: Claim 15 is Abstract

Defendant argues that Claim 15 is directed to the abstract idea of (1) receiving a user inquiry, (2) querying a database in response to the inquiry, and (3) providing product-location and "additional" information. Plaintiff responds that defendant overgeneralizes the claim because it also recites storing data cross-referentially and providing additional information to product-location inquiries. However, "collecting information, analyzing it, and displaying certain results of the collection and analysis" are "a familiar class of claims directed to a patent-ineligible concept." *Electric Power Grp.*, 830 F.3d at 1353 (quotation marks omitted). "Information as such is an intangible, hence abstract, and collecting information, including when limited to particular content (which does not change its character as information), is within the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quotation marks omitted and alteration adopted).

For example, in *Electric Power*, the Federal Circuit considered claims "for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." 830 F.3d at 1351. Nevertheless, the court concluded these claims were directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing these functions." *Id.* at 1354. Similarly, in *West View Research, LLC v. Audi AG*, 685 F. Appx. 923 (Fed. Cir.

8

2017), the Federal Circuit considered a patent claim to a "computer readable apparatus" that can "receive input from a user via . . . function keys," "forward the input to a remote networked server for determination of . . . [the] context associated" with the user's input and "selection of advertising content," and "present the received content" to the user. *Id.* at 926 (quotation marks omitted). The court similarly determined that the claim was directed at an abstract idea of receiving data queries, analyzing the queries, retrieving information in response, and generating a response to the queries. *Id.* (quotation marks omitted).

Like in *Electric Power* and *West View Research*, the claims asserted here are, at bottom, directed to the abstract idea of collecting, analyzing, retrieving, and displaying information. Specifically, the claims are directed at: (1) collecting product-related information; (2) analyzing the product information (i.e., cross-referentially linking the products); (3) receiving a product-location inquiry; (4) retrieving product-location information in response to the query; and (5) presenting the product-location information plus some additional information. Plaintiff does not assert that the claim requires any inventive technology for performing these functions, and plaintiff's expert, Jess Stricchiola, stated that the claim did not require any unconventional computer or network hardware. (Stricchiola Dep. (dkt. #65) 20.) Thus, while the claim does list network components (like a hub), it is not focused on an "improvement to computer functionality itself." *Enfish, LLC v. Microsoft Corp.* 822 F.3d 1327, 1336 (Fed. Cir. 2016) (claims not abstract when "the plain focus of the claims is on an improvement to computer functionality itself"). Indeed, as explained by the inventor of the '260 patent, John Pienkos, the asserted patents

9

sought to improve upon the "traditional employee-customer relationship" by creating better and more accessible records.  (Pienkos Dep. (dkt. #53) 14.)

Next, reciting storing information in a "cross-referential manner" or providing "additional product-related information" does not make claim 15 non-abstract.  *First*, as to "cross-referential" storing of information, the relevant limitation from claim 15 refers generally to "information linking the [searched for] product with another product in a cross-referential manner."  ('260 patent (dkt. #28-1) at 18:44-45.)  Taking the claim in the light most favorable to plaintiff, the court construes that limitation to mean "data linking a product to a different type of product."  (Claims Constr. Table (dkt. #36) at 2); *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (endorsing the district court's construction of claim terms "in the manner most favorable to [the patent holder]" in deciding § 101 eligibility).  Even with that favorable construction, however, the claim contains no requirement for linking the products other than requiring them to be different.  This expansive requirement is really no limitation at all because *any* two, different products could be linked in *any way* and still satisfy the patent.

Moreover, plaintiff's expert, Stricchiola, testified at her deposition that the claims referred to "cross-linking" in a "general sense,"[3] and there was "nothing in the patents that specify particular algorithms or processes by which cross-linking can occur."  (Stricchiola Dep. (dkt. #65) 30-31.)  She further acknowledged that *how* the cross-referencing was

---

[3] Stricchiola used the terms "cross-referencing" and "cross-linking" interchangeably.  (Stricchiola Dep. (dkt. #65) 30-31.)

performed did "not appear to be limited." (*Id.* at 31.) Thus, even construing the claim favorably to plaintiff and considering plaintiff's expert testimony, it only requires a result -- cross-referentially linking different products -- with no limitation on *how* to produce that result. *See Interval Licensing*, 896 F.3d at 1345 (invention encompassed patent-ineligible abstract concept because, as construed, it "demand[ed] the production of a desired result . . . without any limitation on how to produce that result").

Nevertheless, plaintiff suggests in its brief that the "cross-referential" limitation could link toothpaste and floss. (Pl.'s Br. (dkt. #56) 14.) While that is a logical product-category-based pairing, it is the claim that matters to the § 101 analysis, *Accenture Global Servs., GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013), and claim 15 has no requirement for linking products by category. And, even if the claim did recite a system of organizing and cross-referencing products based on product category (like toothcare), such activity was "longstanding conduct that existed well before the advent of computers and the Internet." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) (concluding that organizing and accessing records through index-searchable database was longstanding conduct and pointing out that a library-indexing system "organize[d] and *cross-reference[d]* information . . . *by certain identifiable tags*, e.g., title, author, subject" (emphases added)).

*Second*, claim 15 does list some specific, "additional product-related information," like product quantity, price, availability, and other linked products -- to be collected, analyzed, retrieved, and presented, but limiting the information to a type of content does not change its character as information. *SAP Am., Inc., LLC*, 898 F.3d at 1167. Likewise,

simultaneously displaying two sets of information, like product location and "additional product-related information," does not make the claim patent eligible.  *See Interval Licensing*, 896 F.3d at 1344 ("Standing alone, the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea.").

      Plaintiff's remaining two arguments as to why claim 15 is non-abstract fail for much the same reason: the claim is result-centric and does not explain *how* it achieves the desired result.  First, plaintiff argues that claim 15 somehow made technological advances by (1) storing product-location information in a database that is accessible to customers, (2) storing product information in a database that links related products together, and (3) providing product-location information in response to a customer inquiry *plus* some product-related information that the customer did not request.  However, each of these alleged improvements are directed to a result, and even if the claims recited improved or innovative results (like a customer-accessible database containing product-location information *plus* some "additional information") that is not enough to make the claim patent eligible.  *See Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) ("An improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea.").[4]

---

[4] There is also at least some evidence that one of plaintiff's proposed advances -- storing product information in a database that links related products together -- was already known in the relevant art, since by 1993, kiosks already allowed customers to "locate details of substitute items if a given product is not in stock" and advised customers "about the purchase of extras."  (Rowley Article (dkt. #41-21) 2.)

Second, plaintiff cites to *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), and *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), arguing that its claim improves functionality by enabling customers to access information in real-time and providing additional product information. In *DDR*, the Federal Circuit addressed a claim directed at the problem of retaining website visitors who would be transported away from the host's website after clicking on an advertisement. 773 F.3d at 1257. As an example, a claim called for generating a "hybrid web page that combines visual look and feel elements from the host website and product information from the third-party merchant's website related to the clicked advertisement." *Id.* The court found that claim non-abstract and patent eligible because it was "necessarily rooted in computer technology in order to overcome" a network-specific problem and "recite[d] a specific way to automate the creation of a composite web page." *Id.* at 1257, 1259. In *Core Wireless Licensing*, the Federal Circuit similarly held patents disclosing improved display interfaces that allowed quicker access to desired data via an "application summary window," were directed to improving the user interface for computing devices, and thus, were non-abstract. 880 F.3d at 1359, 1362. In so holding, the court acknowledged that while the idea of summarizing information existed prior to the invention, it upheld the claims over a § 101 challenge because they also disclosed "a specific manner of displaying a limited set of information to the user." *Id.* at 1362. Specifically, by way of example, the court upheld a claim that required (1) an "application summary window" accessed directly from the menu (2) presenting certain data and (3) displayed when one or more device applications were in an "un-launched state." *Id.* at 1362-63.

However, the patent claim at issue here is readily distinguishable from the example claims considered by the federal circuit in *DDR* and *Core Wireless* because claim 15 neither recites a "specific way" nor a "particular manner" of linking products or providing additional product-related information.  To be sure, like the claims in *Core Wireless*, claim 15 requires presenting certain information, but it does not include *specific* requirements for collecting, analyzing, retrieving, and presenting product information.  To the contrary, the method for doing so remains completely abstract.[5]

B.  *Alice* Step Two: Claim 15 does not Recite an Inventive Concept

Because claim 15 is directed to an abstract idea, the court turns to *Alice* step two.  At that step, the court "must examine the limitations of the claims to determine whether [they] contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 221).  This step requires the court to "determine whether the claims do significantly more than simply describe that abstract method."  *Id.*  "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."  *Alice*, 573 U.S. at 221 (alterations adopted and quotation marks omitted).  Those additional features "must be more than well-understood, routine, conventional activity."  *Ultramercial*, 772 F.3d at 715.

---

[5] Tellingly, the claims in *DDR* and *Core Wireless* are further distinguishable because they were directed to problems specific to the internet and electronic devices, respectively, while the internet and electronic devices were only incidental to claim 15, which purported to improve the "traditional employee-customer relationship."  (Pienkos Dep. (dkt. #53) 14.)

Claim 15 does not meet this requirement.  Indeed, *nothing* in claim 15 transforms it from an abstract idea to something patent eligible.  Again, at most, plaintiff suggests inventive concepts exist by linking products in a "cross-referential manner" and providing "additional information" beyond the product location, but as explained in the *Alice* step one analysis above, those both are themselves abstract ideas, and as such, cannot be the basis for an inventive concept, even if considered as an ordered combination.  Without pointing to any specific claim language, plaintiff also suggests that allowing customers to query the database is an inventive concept, but such a limitation only amounts to a result that does not recite an inventive concept.  *Interval Licensing*, 896 F.3d at 1341 ("claim limitations directed only to a result do not recite an inventive concept").[6]

Finally, claim 15 implicates the very policy concerns underlying § 101 by claiming the broadest possible, abstract idea, and thereby threatening to monopolize every potential solution to a problem.  *Interval Licensing*, 896 F.3d at 1343 ("a patent claim which ties up . . . an abstract idea 'might tend to impede innovation more than it would tend to promote it.'")  This problem is illustrated by plaintiff's assertion of infringement under claim 15 of the '260 patent because defendant's mobile displays provide customers with product location, price, quantity, and availability, as well as links to other products in response to

---

[6] In any event, the evidence of record shows that such a system was not inventive, but was well-understood and routine by 1993, some *six years* before plaintiff filed the provisional application for the patents in suit.  (Rowley Article (dkt. #41-21) 1-3.)  Indeed, the Rowley article explains that stores had, albeit in relatively small numbers, already used kiosks allowing customers to access product information.  (*Id.*)  In fairness, the article does state that, in 1993, kiosks were "rare and experimental in the retail industry" because of their unproven return on investment, but the article also notes that one brand had placed 600 kiosks in stores.  (*Id.* at 3, 6.)

15

a customer inquiry. (Pl.'s Am. Compl. (dkt. #28) ¶¶ 17-24.) In fact, plaintiff offers as proof pictures from defendant's mobile application, which displays, among other things, in response to a query for hand towels, suggestions for other products, like bath towels. (*Id.*) However, plaintiff does not allege that defendant used any particular method or process for linking hand towels with bath towels. (*Id.*) Thus, no matter *how* defendant linked the products, it would infringe claim 15. Having monopolized every solution that reaches this specified result, claim 15 threatens to stifle further innovation by prohibiting all other entities from reaching the same result, no matter the means used. *See Le Roy v. Tatham*, 55 U.S. at 175 (a patent is not good for a result because it "would prohibit all other persons from making the same thing by any means whatsoever").

### III. Claim 15 of the '260 Patent is Representative

The court has separately considered all other claims in this action and determined that rearticulating the same *Alice* analysis for each one is unnecessary, as each of the asserted patents claim the same abstract idea of collecting information, analyzing it, retrieving it, and displaying it. *See Content Extraction*, 776 F.3d at 1348 (approving the use of representative claims where "all the claims are substantially similar and linked to the same abstract idea" (quotation marks omitted)); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (courts may treat a claim as representative where patentee offers no "meaningful argument for the *distinctive significance* of any claim limitations not found in the representative claim" (emphasis added)).

While plaintiff asserts there are important limitations in some other claims that distinguish them from claim 15 of the '260 patent, even its strongest example falls short.

16

Claim 1 of the '933 patent recites providing a product suggestion "in accordance with one or more preferences of the customer" based on the customer's past location inquiries. ('933 patent, 16:31-17:03.) However, "customizing information" based on the user's preferences and history is still an "abstract idea." *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363, 1369 (Fed. Cir. 2015).

Finally, without citation to any authority, plaintiff asserts that, because claim 15 of the '260 patent recites a method claim, it cannot be representative of the '380 and '315 patents, which recite system patent claims. However, a method claim can be representative of system claims. *Cf. Alice*, 573 U.S. at 214, 226 (concluding that system claims were no different from method claims). Regardless, in this case, plaintiff's system claims recite systems for providing product locations in a store; thus, the system claims in those patents are directed to the same abstract idea as claim 15. ('380 Patent 16:40-41; '315 Patent 18:19-21.) Accordingly, because plaintiff has failed to establish a "distinctive significance" of any limitation not found in the representative claim, the court concludes that claim 15 of the '260 patent is representative, *Berkheimer*, 881 F.3d at 1365, and all the asserted claims are directed to an abstract idea and patent-ineligible subject matter under § 101.

ORDER

IT IS ORDERED that:

1) Defendant Target Corporation's motion for summary judgment (dkt. #48) is GRANTED as to all patents in suit;

2) Plaintiff Innovaport, LLC's, motion for partial summary judgment (dkt. #37) is DENIED;

3) Defendant's motions for claims construction (dkt. #45), to strike plaintiff's expert's declaration (dkt. #55), and for a claims construction hearing (dkt. #73), are all DENIED AS MOOT; and

4) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 6th day of February, 2024.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge